IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PATRICK TAPIA,

        Plaintiff,

vs.                                              Civ. No. 02-599 RHS

JO ANNE B. BARNHART, COMMISSIONER
OF THE SOCIAL SECURITY ADMINISTRATION,

        Defendant.

## MEMORANDUM OPINION AND ORDER

1.  This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing,  filed December 9, 2002  [Doc. 11].  The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Plaintiff, age 32, alleges a disability which commenced May 7, 2000 due to back and mental problems.

2.   The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") likewise denied the applications, concluding that Mr. Tapia retained the residual functional capacity for simple, repetitive light and sedentary work compromised by only occasional crouching, kneeling, balancing and climbing and was therefore not disabled.  The Appeals Council denied review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3.  At the time of the Commissioner's final decision, claimant was 31 years old, with a G.E.D. and one year of post-high school education in a medical assisting program.  His relevant work experience was as a medical assistant, cashier and lumber yard sales clerk.

4. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

5. Mr. Tapia raises two issues on appeal. First, he contends that the ALJ failed to properly consider his mental impairment when making his residual functional capacity ("RFC") finding. Second, he contends that because of Mr. Tapia's mental impairment, the ALJ erred in applying the Medical Vocational Guidelines and should have instead obtained testimony from a vocational expert.

6. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Id. at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability application. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

**7.** At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

8. The first four steps of the sequential evaluation process are not at issue in this case. At step five, the burden shifts to the Commissioner to show that the claimant has a Residual Functional

2

Capacity ("RFC") to do work in the national economy other than past relevant work.  <u>Thompson</u> at 1487 (citations omitted).  The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  The grids reflect the existence of jobs in the national economy at various Residual Functional Capacity ("RFC") levels by incorporating administrative notice of occupational publications and studies.  20 C.F.R. §§404.1566(d); 416.966(d).  This aids the Commissioner  in determining what specific job types in the national economy the claimant can perform.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

9.   The ALJ determined that the Plaintiff's degenerative disc disease was an exertional impairment that rendered him unable to return to his past work, but that he remained capable of performing a wide range of light and sedentary jobs.  Mr. Tapia contends that his mental impairment was not given adequate consideration in the ALJ's determination of nondisability.

10. A severe mental impairment is a nonexertional limitation that must be considered by the Commissioner if there is evidence to support the existence of the impairment.  <u>Cruse v. U.S. Dep't of Health &Hum. Serv.</u>, 49 F.3d 614, 619 (10th Cir.1995); <u>Hargis v. Sullivan</u>, 945 F.2d 1482, 1491 (10th Cir. 1991); <u>Williams v. Bowen</u>, 844 F.2d 748, 752 (10th Cir. 1988).  A claimant's mental impairment must also be evaluated in combination with the effects of other impairments.  <u>Hargis v. Sullivan</u>, 945  F.2d 1482, 1491 (10th Cir. 1991).

11.  At the time he filed his application for benefits, Plaintiff had not sought treatment from any mental health specialist, however, Mr. Tapia had been given  prescriptions for antidepressants by primary care physicians.  On January 18, 2001, the Commissioner referred  Mr. Tapia  to Dr. Steven Sacks for a consultative psychiatric examination. Dr. Sacks opined that Plaintiff was experiencing a major depression, recurrent.  <u>Tr.at 228</u>.  He stated that Mr. Tapia "could understand and remember

simple short instructions and somewhat more complex instructions" and could "perform simple repetitive and somewhat more complex tasks."   He related that the claimant would have difficulty relating with other workers and withstanding the stress and pressures associated with day-to-day work activity due to his untreated depression.  Tr. at 229.

12.  The ALJ  also relied on the opinions expressed by J. Leroy Gabaldon,  Ph.D. and Scott Walker, M.D. in a Psychiatric Review Technique Form (SSA-2506-BK)  that tracks the procedure set forth in 220 C.F.R.§ 404.1520a. This procedure first requires a determination of the presence or absence of "certain medical findings which have been found especially relevant to the ability to work," sometimes referred to as the "Part A" criteria. 20 C.F.R. § 404.1520a(b)(2).  The degree of functional loss resulting from the impairment is then quantified,  using the "Part B" criteria. 20 C.F.R. § 404.1520a(b)(3). The reviewing State agency mental health experts compared the evidence concerning Plaintiff's mental impairment with the criteria listed described in the Listing of Impairments and  found that Plaintiff's symptoms (based on Dr. Sacks' report) did  not meet the specific diagnostic criteria for depressive syndrome.  Tr. at 233.   The Part B analysis was continued, however, based on the diagnosis of depression,  and concluded that Mr. Tapia had only mild  functional  restrictions on his activities of daily living, maintaining social functioning, and deficiencies of concentration, persistence or pace and never had episodes of deterioration or decompensation. Tr. at 240.

13.  A evidentiary  hearing was held on January 17, 2002, at which Plaintiff testified that he began experiencing depression in 1997 that made him feel " worthless," Tr. at 50, " irritated," Tr. at 47, and "always tired." Tr. at 46.  Mr. Tapia was allowed thirty days following the hearing to submit additional medical evidence.

14.  On January 29, 2002, Dr. George Baca evaluated Plaintiff and completed a form called " Medical Assessment of Ability to do Work-Related Activities (Mental)."  The ALJ observed that

4

"claimant was sent by his representative to Dr. Baca with the intention of [submitting the document] as a treating psychiatrist's opinion." Tr.at 19. The form asks for evaluations of a claimant's capability in three work-related areas: making occupational adjustments, making performance adjustments, and making personal-social adjustments. It requires the examiner to assess the claimant's abilities as "more than satisfactory," "limited but satisfactory," seriously limited and unsatisfactory,"and "no useful ability to function in this area." Dr. Baca indicated that Mr. Tapia's abilities in nearly all the activities listed under the three general areas were in the "no useful ability to function" category. Tr.at 332-334. Dr. Baca diagnosed Mr. Tapia with severe, recurrent depression and a generalized anxiety disorder. Tr.at 335-337.

15. The ALJ considered Dr. Baca's report and gave it " the weight due an examining physician's report," but found that there was no "treatment relationship" between Dr.Baca and Mr. Tapia. Tr.at 18. This finding modifies the significance of the physician's impressions in the decision making process. A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it. Goatcher v. Dep't of Health & Hum. Serv., 52 F.2d 288, 289 (10th Cir. 1995) (citing Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987). The ALJ noted that Plaintiff had seen Dr. Baca on only one occasion and that the evaluation was based entirely on Mr. Tapia's statements which were inconsistent with the rest of the record. Tr.at 17,19. In this case, the Court agrees that Dr. Baca is not a treating physician as described in 20 C.F.R. §§404.1527(d)(2) and 416.927 (d)(2).

16. Not only did the ALJ find that the answers to the form questions were inconsistent with the medical record, he also found them inconsistent with Dr. Baca's "Psychiatric Evaluation/Comprehensive Assessment" report which was completed on the same date. For example, the ALJ observed that although Dr. Baca's report found Plaintiff's judgement to be adequate, Dr. Baca indicated on the form that Mr. Tapia had no useful ability to use judgement.   17. The opinion

5

of a physician may be accorded little weight when it is internally inconsistent. <u>Goatcher v. Dep't of</u>
<u>Health & Hum. Serv.</u>, 52 F.3d 288, 290 (10th Cir. 1995). It is also clearly within the ALJ's authority
to reject physician's opinions which are unsupported by the objective evidence of record. <u>See</u>
<u>Castellano v. Sec. of Health & Hum. Serv.</u>, 26 F.3d 1027, 1029 (10th Cir. 1994).The ALJ reasons for
rejecting Dr. Baca's opinion are specific and well supported by the evidence.

18.   The determination that Plaintiff's subjective complaints to Dr. Baca, to other health care
providers, and to the Administration were totally not credible was discussed in detail in the ALJ's
opinion.   "Credibility determinations are peculiarly the province of the finder of fact, and we will not
upset such determinations when supported by substantial evidence." <u>Diaz v. Sec'y of Health & Hum</u>
<u>Servs.</u>, 898 F.2d 774, 777, <u>cited</u> in <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995).   The ALJ
articulated specific reasons for questioning the claimant's credibility.   He cited numerous examples
of inconsistent statements made by Mr. Tapia to health care providers and the Administration
concerning critical issues in this case including:  (1) when and why he stopped working; (2) accidents
in which he claimed to have been injured; (3) use of assistive devices and medications; and (4) the
activities he was able to perform. <u>Tr. at 14, 16-19.</u>  The ALJ  found that Mr. Tapia's "statements of
record have very little credibility and cannot be relied upon to determine almost any issue raised by
his claims." <u>Tr.at 14</u>.

19.   Plaintiff argues that the inconsistencies in the record may be caused by his mental
impairment and do not rise to the level of substantial evidence.  The Court  has reviewed the entire
record and the ALJ's extensive analysis of the factors he considered in making his credibility decision
and finds that it is supported by substantial evidence.

20.   The ALJ's finding regarding the claimant's noncredibility does not compel a finding of not
disabled.  Rather, the credibility determination is just a step on the way to the ultimate decision.  The

ALJ must also determine whether the claimant has an RFC level and can perform the full range of work at his or her RFC level on a daily basis. Thompson v. Sullivan, 987 F.2d 1482, 1491 (10th Cir. 1993).

21.   The ALJ  found that Claimant retained  the capacity for  the exertional requirements ordinarily associated with light work.  He also found that Mr. Tapia had nonexertional limitations due to his mental impairments that would restrict him to performing simple, repetitive work.  Tr. at 19.

22.  Plaintiff contends that the ALJ erred when he used the grids to determine Mr. Tapia was not disabled.  However, the mere presence of a nonexertional impairment  does not preclude reliance on the grids.  Id., (citing Ray v. Bowen, 865 F.2d 222, 225 (10th Cir.1989)).  When a claimant presents evidence of both exertional and nonexertional impairments, the grids are not conclusive but merely form a framework for disability determination.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2).   In such a case, the ALJ must make findings of fact regarding how much the nonexertional limitations diminish the claimant's work ability.  20 C.F.R. §§ 404.1545, 416.945; Sharp v. Bowen, 705 F.Supp. 1111, 1118 (W.D.Pa. 1989). The presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant.  Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988); see also Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988).

23.  Plaintiff contends that because both exertional and nonexertional impairments diminish his residual functional capacity, the Commissioner should have not have relied on the grids but should have  produced testimony from a vocational expert to establish the existence of jobs which Mr. Tapia could perform in the national economy.  The question for this Court is whether the use of the grids as a framework for the ALJ's decision is supported by substantial evidence in the record.  The ALJ gave detailed and specific reasons for his finding  that Mr. Tapia's mental impairment would not

substantially reduce the number of light and sedentary jobs Plaintiff could perform.  The record  fully supports the ALJ's decision.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing is DENIED and this cause of action is DISMISSED WITH PREJUDICE.

ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE